UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHARY NASSIMI, <br><br> Defendant. | CASE NO. C09-5438BHS <br><br> ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING SUMMARY JUDGMENT ON THE ISSUE OF IMPUTATION IN FAVOR OF PLAINTIFF; AND DENYING DEFENDANT'S MOTION TO STRIKE DECLARATION |

This matter comes before the Court on Defendant's motion for partial summary judgment (Dkt. 23). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies Defendant's motion, as discussed herein.

**I. PROCEDURAL HISTORY**

On July 17, 2009, Plaintiff filed its complaint against Defendant. Dkt. 1. On July 24, 2009, Plaintiff amended its complaint. Dkt. 9. On January 23, 2010, Defendant filed the instant motion for partial summary judgment. Dkt. 23. On February 16, 2010, Plaintiff responded. Dkt. 30. On February 22, 2010, Defendant replied. Dkt. 31. On March 31, 2010, the Court ordered additional briefing on issues pertaining to the instant motion. Dkt. 45. On April 9, 2010, the parties filed their simultaneous supplemental briefing. Dkts. 47, 48.

ORDER - 1

## II. FACTUAL BACKGROUND

This matter arises out of a dispute regarding Plaintiff's purchase of Defendant's company, International Electronics, Inc. ("IEI"). Dkt. 9 ("Amended Complaint") ¶ 2. Plaintiff The Chamberlain Group, Inc. ("Chamberlain") acquired IEI on or about July 27, 2007. *Id.* At the time, Defendant Shary Nassimi ("Nassimi") was the sole owner of IEI.

IEI's business involved the "making and selling [of] devices such as wireless intercoms that used low-powered radio transmitters." Amended Complaint ¶ 3. In connection with the sale of IEI, Chamberlain alleges, Nassimi made representations that form the basis of its complaint. Amended Complaint ¶ 4. Among other causes of action, Chamberlain alleges that it "recently discovered" that Nassimi induced its agreement to purchase IEI through fraud in that certain of Nassimi's representations were and are untrue. Amended Complaint ¶ 5. Based on this alleged recent discovery, Chamberlain seeks the equitable remedy of rescission or, alternatively, substantial damages. Amended Complaint ¶ 6.

Specifically, Chamberlain bases its right to rescind the contract on the following facts, as alleged in the Amended Complaint:

> 37. Chamberlain is . . . entitled to rescission because its assent to enter into the Agreement was procured through fraud.
> 38. Nassimi fraudulently induced Chamberlain to enter into the Agreement. In entering into the Agreement, Nassimi made material false representations of fact with respect to the devices manufactured by International, including material misrepresentations about the power level of the devices (as submitted to the FCC and as manufactured). Nassimi further made false representations of fact with respect to the International's compliance with law.
> 39. Nassimi intentionally withheld from Chamberlain the fact that some or almost all International's FCC authorizations had been procured through fraud. He had instructed one or more of his employees involved in the due diligence process not to tell Chamberlain about the fraud, and informed Chamberlain that all International's products complied with all laws and regulations. These misrepresentations and fraudulent omissions were made knowingly and Nassimi never intended that these facts would be true at the time that Chamberlain entered into the Agreement.
> 40. Had Chamberlain known the truth about the means by which Nassimi had obtained the FCC certifications, it never would have entered into the Agreement.

      41. In point of fact, all or substantially all of International's products were not in compliance with FCC regulations and did not comply with all laws and regulations.
      42. Nassimi knew that all or substantially all of International's products were not in compliance with FCC regulations and did not comply with all Laws.
      43. Nassimi's intention was that Chamberlain rely on the fraudulently procured FCC certifications and enter into the Agreement.
      44. Chamberlain did not know and had no way to know that the FCC certifications were procured through fraud.
      45. Chamberlain reasonably relied on the Nassimi's representations. Chamberlain was bargaining in good faith with Nassimi and presumed he was doing the same. Chamberlain had the right to rely on Nassimi bargaining in good faith and that he would engage in accurate, truthful and non-deceptive disclosures.
      46. Chamberlain has moved with reasonable promptness to preserve its claim for rescission.

Additionally, when Chamberlain acquired IEI, one of Nassimi's employees, Jim Crider ("Crider"), became an employee of Chamberlain. *See* Declaration of Thomas A. Brookbank ¶¶ 2, 3. Crider testified that he was aware of the alleged fraud prior to his employment with Chamberlain and initially concealed the alleged fraud from Chamberlain. *See, e.g.*, Declaration of Jim Crider (Crider Decl.) ¶ 17.

Based on the foregoing, "Chamberlain [seeks] . . . return of the full $14 million paid for Nassimi's shares plus interest, and other damages as allowed by law or equity." Amended Complaint ¶ 47.

### III. DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

ORDER - 3

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.   Nassimi's Summary Judgment Motion**

Nassimi moves the Court to order partial summary judgment in his favor by dismissing Chamberlain's rescission claim. Dkt. 23 at 1. Nassimi primarily predicates his motion on two theories. First, Nassimi argues that Chamberlain waived its right to rescission, based on its being dilatory in asserting any such right. Dkt. 23 at 1-2. Second, even if Chamberlain did not waive its right of rescission, Nassimi asserts rescission is unavailable because Chamberlain is unable to return IEI to Nassimi in the condition in which it existed prior to sale. *Id.* at 2. The crux of this motion centers around when Chamberlain knew or should have known that certain of IEI's products were not FCC

compliant, contrary to Nassimi's representations, to the extent such knowledge would give rise to Chamberlain's claim of fraud[1] and, thereby, entitle it to rescind the contract at issue. *See, e.g.,* Dkt. 23.

### 1. Rescission, Generally

Rescinding a contract for fraud is supported by public policy. *See Winsor v. Commonwealth Coal Co.*, 63 Wash. 62, 73 (1911). "The rule is that the party who desires to rescind a contract on the ground of fraud must, *upon the discovery of the facts*, at once (or at least reasonably quickly) announce his purpose and adhere to it." *Fines v. West Side Implement Co.*, 56 Wn.2d 304, 310 (1960) (emphasis added). "A party ratifies an otherwise voidable contract if, after discovery of the facts that would warrant rescission, he or she remains silent or continues to accept benefits under the contract." *Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 433 (quoting *Wilson v. Pearce*, 57 Wn.2d 44, 53 (1960)), *review denied*, 111 Wn.2d 1019 (1988).

The right of rescission may be waived. Waiver is a voluntary and intentional relinquishment of a known right. *Grant v. Morris*, 7 Wn. App. 134, 137 (1972).

> It should be remembered that waiver is an equitable doctrine. Its purpose is to facilitate the doing of equity, not the perpetration of fraud. While reliance is not a requirement, as it is in the doctrine of estoppel (*see Kessinger v. Anderson*, 31 Wn.2d 157 (1948)), it is still necessary to show that the party who it is claimed has waived a right, did so intentionally and with full knowledge of his rights. In *Vinneau v. Goede*, 50 Wn.2d 39 (1957), we held that the question whether there was an intent to waive is one of fact.

*Weitzman v. Bergstrom*, 75 Wn.2d 693, 699 (1969). Waiver is an intentional act with a purpose and intent to forgive the fraud and a clear election not to rescind. *Birkeland v. Corbett*, 51 Wn.2d 554 (1958); *Wickre v. Allen*, 58 Wn.2d 770 (1961). Whether waiver occurred is a factual question that depends upon the intent or state of mind of

---

[1] The nine elements of fraud are: (1) a representation of existing fact, (2) that is material, (3) and false, (4) the speaker knows of its falsity, (5) intent to induce another to act, (6) ignorance of its falsity by the listener, (7) the latter's reliance on the truth of the representation, (8) her right to rely on it, and (9) consequent damage. *Pedersen v. Bibioff*, 64 Wn. App. 710, 723 n. 10 (1992).

ORDER - 5

respondents. That intent may be inferred from acts done. *Davis v. Pennington*, 24 Wn. App. 802, 804 (1979).

"When a party fails to take steps to rescind within a reasonable time and instead follows a course of conduct inconsistent therewith, the conclusion follows that he has waived his right of rescission and chosen to continue the contract." *Town of LaConner v. American Const. Co., Inc*., 21 Wn. App. 336, 340 (1978) (citing *Fines,* 56 Wn.2d at 304; *Coovert v. Ingwersen*, 37 Wn.2d 797 (1951); *Prager's, Inc. v. Bullitt Co.*, 1 Wn. App. 575 (1969); *see* S. Williston, A Treatise on Law of Contracts § 688 (3d ed. 1961)). "When found to exist, the exercise of dominion over the intrinsic asset of a contract, as well as an unreasonable delay in manifesting intent to rescind, give rise to a permissible inference of intent to waive the right of rescission." *Hoke v. Stevens-Norton, Inc.*, 60 Wn.2d 775, 779 (1962) (citing 2 Restatement, Contracts §§ 483, 484, pp. 921, 924).

However, "waiver of a right will not be inferred from doubtful factors, and there must be evidence of an intent to relinquish the right." *Clover Park School Dist. No. 400 v. Consolidated Dairy Products Co.*, 15 Wn. App. 429, 435 (1976) (citing *Bonanza Real Estate, Inc. v. Crouch*, 10 Wn. App. 380 (1974)). Moreover, waiver will not occur where a party has not yet discovered the facts warranting an action for rescission. *See Bayley v. Lewis*, 39 Wn.2d 464 (1951).

**2.     Nassimi Claims Rescission Is Unavailable to Chamberlain**

    **a.     Waiver**

The parties dispute whether wavier of any right of rescission occurred in this matter.

        **i.     Non-Waiver Clause**

As a threshold issue, Chamberlain asserts that the non-waiver clause in the purchase agreement prevents Nassimi from asserting that Chamberlain waived its right to rescind. Dkt. 30 (citing § 8.12 of the agreement). Nassimi, on the other hand, argues rescission is not a right contemplated by the non-waiver clause. The Court finds these arguments unpersuasive. Even a non-waiver clause may be waived by conduct of a party whereby

ORDER - 6

the party estops itself from relying on such a clause. *See Fisher v. Tiffin* (en banc), 275 Or. 437, 441-42 (1976) (citing 3A Corbin on Contracts 531, § 763 (rev. ed. 1960) (collecting cases). Therefore, absent another basis for summary judgment, this issue remains a question of fact for the jury.

### ii.    Delay

Nassimi argues that Chamberlain waived its right of rescission because it delayed too long in asserting its claim for rescission. *See* Dkt. 23 at 16 (collecting cases). It is Nassimi's position that Chamberlain's right, if any, to rescind the purchase agreement began at a minimum when it first learned of Nassimi's alleged false representations regarding FCC compliance. *See, e.g.*, Dkt. 23 at 15-17. For this position, Nassimi relies on a claim notice that Chamberlain sent to him, dated April 10, 2008. Dkt. 27 at 71-72, Ex. K at 1-2, Declaration of Shary Nassimi (Nassimi Decl.). The claim notice requested damages based on Nassimi's "failure to disclose that numerous products failed to meet FCC regulations prior to and as of the closing date of the transaction." *Id*. The claim notice stated the following:

> Jim Crider has admitted to Buyer that he had actual knowledge of these issues and has admitted to Buyer that Seller had actual knowledge of these issues. Indeed Mr. Crider will testify that Seller instructed him to make the change to the Transmitter which resulted in noncompliance with the FCC regulations . . . . As noted, Seller, *at a minimum*, had knowledge of these breaches and *arguably* committed fraud and/or intentional misrepresentations . . . .

*Id*., Ex. K at 2-3. Significantly, this claim notice did not assert any right to rescission; rather, it only asserted a right to damages pursuant to the purchase agreement. *Id*.

Chamberlain claims it first asserted its right, if any, to rescind the contract by letter dated July 14, 2009. Nassimi Decl., Ex. P at 1-4. Chamberlain contends, by declaration, that it did not discover facts giving rise to its right to rescind the agreement on the basis of fraud until June of 2009, at the earliest. *See, e.g.,* Declaration of Robert Keller (Keller Decl.) ¶ 17.

Although a party must be prompt in noticing their intent to rescind an agreement, the clock does not begin to run until the party has discovered the facts giving rise to a claim for rescission. *Fines*, 56 Wn.2d at 310. For purposes of the instant motion, the Court views the claim notice dated April 2008 as being equivocal on the issue of fraud. Further, waiver must be intended, which is generally a question of fact for the fact finder. *Clover Park School Dist. No. 400*, 15 Wn. App. at 435. More importantly, Chamberlain maintains that it did not discover the facts warranting an action for rescission until June of 2009. If true, the Court cannot find as a matter of law that Chamberlain waived its right, if any, to rescind when it did not assert its right of rescission in 2008. *See Bayley*, 39 Wn.2d at 464 (actual discovery of facts warranting action of rescission triggers the clock to rescind, not earlier). Because Chamberlain attests that it did not discover the fraud until June of 2009, the Court takes that fact as true for purposes of summary judgment. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. (The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.)

### 3. **Imputation of Knowledge**

#### a. **Agency**

Nassimi also makes an argument that the knowledge of fraud should be imputed to Chamberlain through Crider:

> The sale of Nassimi's business closed on July 27, 2007. Nassimi Decl., ¶ 22, Exh. O. Jim Crider, the source of Chamberlain's allegation that Mr. Nassimi misrepresented FCC compliance issues, became a Chamberlain employee as of the date of the closing, July 27, 2007. Mr. Crider's knowledge of alleged misrepresentation became Chamberlain's knowledge of misrepresentation as of July 27, 2007.

Dkt. 23 at 14.

Nassimi's argument for imputation is apparently predicated on the holding of *Goodman v. Boeing Co.*, 75 Wn. App. 60, 85 (1994). *See* Dkt. 48 at 2. Nassimi relies on *Goodman* for the proposition that Crider's knowledge of the alleged fraud is imputed to Chamberlain because Crider's knowledge was "relevant to the agency and the matters

ORDER - 8

1   entrusted to the agent." Dkt. 48 at 2. However, in *Goodman*, the court concluded that
2   "knowledge may be imputed if it relates to the subject matter of the agency, *and the agent*
3   *acquired it while acting within the scope of his or her authority*." *Goodman*, 75 Wn. App.
4   at 85 (citing *Peck v. Siau*, 65 Wn. App. 285, 290, *review denied*, 120 Wn.2d 1005 (1992))
5   (emphasis added).

6      Crider originally worked for IEI under the direction of Nassimi. Crider Decl. ¶ 3.
7   Following the sale of IEI, Crider became an employee of Chamberlain Wireless, the
8   wholly owned subsidiary of Chamberlain. *See* Crider Decl. ¶ 20 (admitting, on or about
9   June 15, 2009, to the alleged fraud and asserting Nassimi's responsibility therein and
10  noting that he was fired shortly thereafter). Crider's knowledge, therefore, cannot be
11  imputed in accord with *Goodman* because Crider, by his own admission, acquired
12  knowledge of the alleged fraud before being hired by Chamberlain. *See, e.g.,* Crider Decl.
13  ¶¶ 17, 19. Put otherwise, *Goodman's* interpretation of *Peck* is fatal to Nassimi's position
14  regarding imputation. *Id.*

15      Chamberlain argues as further support against a finding of imputation that "an
16  alleged participant in the fraud[ ] cannot use imputation as a shield to avoid liability."
17  Dkt. 47 at 3 (initial caps removed) (citing *NCP Litig. Trust v. KPMG, LLP*, 901 A.2d 871,
18  882 (N.J. 2006); Restatement (Third) of Agency § 5.04, cmt. c). In short, these authorities
19  stand for the proposition that a third party cannot invoke the imputation doctrine where
20  that person is accused of the fraud. *See id*. The Court concludes that this rule provides an
21  additional basis on which to reject Nassimi's position with respect to the issue of
22  imputing knowledge to Chaimberlain. If it that were not the case, a seller who defrauds a
23  buyer would have an unjust route of escape to avoid accountability for his or her fraud.

24      Therefore, the Court grants summary judgment in favor of Chamberlain on the issue
25  of imputed knowledge.

### b.     Adverse Interest Doctrine

The parties dispute whether the adverse interest doctrine applies to prevent Crider's knowledge of the alleged fraud to be imputed to Chamberlain. *See, e.g.*, Dkt. 47 at 2. Nassimi argues this exception is inapplicable here because Crider was not acting entirely for his own purpose. Dkt. 48 at 5 (relying on *In re American Continental Corp./Lincoln Sav. and Loan Securities Litigation*, 794 F. Supp. 1424, 1463 (9th Cir. 1992)).

In opposition, Chamberlain argues that the adverse interest exception applies because Crider's actions were not beneficial to Chamberlain, notwithstanding any sincere motivation Crider may have had in concealing the alleged fraud. Dkt. 47 at 2 (relying on *Plywood Marketing Associates v. Astoria Plywood Corp.*, 16 Wn. App. 566, 558 (1976)). While facially appealing, Chamberlain's argument overstates the rule from *Plywood*.

> Generally speaking, a principal is chargeable with notice of facts which are within the knowledge of his agent, acquired within the scope of the agent's authority. A well recognized exception to this rule is that, where an agent acquires information which it would be to his advantage to conceal from his principal, it is assumed that he did not impart such knowledge to his principal, and accordingly knowledge would not be imputed to the principal. This exception, however, is qualified by the rule that, if the agent is the sole representative of the principal, or the only person or means by which the principal acts, then the knowledge of the agent will be imputed to the principal, and the general rule applies, and not the exception thereto.
>
> ***
>
> Even if the agent's interest is adverse to that of his principal, knowledge will be imputed if the agent is the "sole representative" of the principal . . . . "The principal is regarded as acting with knowledge of a fraudulent act when represented solely by an agent who possesses such knowledge."

*Puget Sound Nat. Bank v. St. Paul Fire and Marine Ins. Co.*, 32 Wn. App. 32, 41 (1982) (citations omitted). Neither party contends that Crider was the sole representative of Chamberlain, as contemplated in *Puget Sound Nat. Bank* and *Plywood*. Therefore, this exception does not apply to the instant matter.

The rule from the Restatement Second of Agency is applicable here. "Under the adverse agent doctrine, *where an agent secretly acts entirely* for his or her own benefit, the agent's knowledge is not imputed to the principal." *American Continental*, 794 F. Supp. at 1463 (emphasis added) (citing Rest.2d of Agency § 282). "This doctrine,

ORDER - 10

however, does not apply where a corporation benefits from the agent's conduct, even when the net result may be detrimental to the corporation's interests. Rest.2d of Agency § 282(2)(b), supra." *Id*.

Here, the parties dispute whether Chamberlain benefitted from Crider's concealment of the alleged fraud. Compare Dkt. 47 at 2 with Dkt. 48 at 6; see also Crider Decl. ¶ 17 (discussing Crider's belief that his concealment of the alleged fraud was for the benefit of Chamberlain). Because Chamberlain does not concede that Crider acted to benefit Chamberlain, even though his actions may have caused harm, a question of material fact remains.

However, because Nassimi's imputation argument is foreclosed for other reasons, see section III(B)(3) of this order, summary judgment on the imputation issue is properly granted in favor of Chamberlain.

### c. Corporate Officer's Knowledge

Chamberlain argues that Crider's knowledge of the alleged fraud cannot be imputed based on any "corporate officer" theory. To the extent such an argument is made by Nassimi, it is rejected as a matter of law, because Crider was never a corporate officer of Chamberlain or its wholly owned subsidiary, Chamberlian Wireless Products. *See* Brookbank Decl. ¶¶ 2, 3.

Therefore, summary judgment is granted in favor of Chamberlain on the imputation issue.

### 4. Unable To Return To *Status Quo Ex Ante*

Alternatively, Nassimi moves the Court to enter partial summary judgment on the basis that Chamberlain altered IEI in such a manner after acquisition that IEI could not possibly be returned to Nassimi in the manner in which it was sold. *See* Dkt. 23 at 18 (relying on, *e.g.*, Declaration of James Torguson, Dkt. 25). Chamberlain flatly denies Nassimi's claim. *See, e.g.,* Dkt. 30 at 20 (relying on Keller Decl., Dkt. 30-2 ¶ 21).

1    Although Nassimi correctly points out that courts have held that a party's actions may be deemed incompatible with rescission given an inability to return the parties to the *status quo ex ante*, such a finding cannot be made by the Court on summary judgment when material questions of fact regarding such compatibility remain. When the Court reviews the facts of this case in the light most favorable to Chamberlain, it cannot resolve the issue as a matter of law. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. (The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.)

Therefore, the Court denies Nassimi's motion for partial summary judgment on this issue.

**5.    Conclusion**

Because the Court concludes that questions of material fact remain as to whether Chamberlain waived its right to rescission, if any, and whether the parties could have been returned to the *status quo ex ante*, the Court denies Nassimi's motion for partial summary judgment. However, the Court grants summary judgment in favor of Chamberlain on the issue of imputation.

**C.    Motion to Strike**

In his reply brief, Nassimi moves the Court to strike the Keller Declaration in its entirety. Dkt. 31 at 9. The Court has reviewed the declaration and Chamberlain's supplemental briefing on the issue (Dkt. 48 at 6-8) and declines to strike the declaration.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that:

1. Nassimi's motion for partial summary judgment on the issue of rescission is **DENIED**.

2. The Court **GRANTS** summary judgment in favor of Chamberlain on the issue of imputation.

3. The Court **DENIES** Nassimi's motion to strike the Keller Declaration.

DATED this 10th day of May, 2010.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 13