UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE CHAMBERLAIN GROUP, INC.,

    Plaintiff,

v.

SHARY NASSIMI,

    Defendant.

CASE NO. C09-5438BHS

ORDER GRANTING IN PART AND DENYING IN PART CHAMBERLAIN'S MOTION FOR SUMMARY JUDGMENT AS TO NASSIMI'S COUNTERCLAIMS

This matter comes before the Court on Chamberlain Group, Inc.'s ("Chamberlain") motion for summary judgment as to Defendant Shary Nassimi's ("Nassimi") Counterclaims (Dkt. 86). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Chamberlain's motion for summary judgment for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL HISTORY

In July 2007, Chamberlain entered into an agreement ("Purchase Agreement") with Nassimi to purchase his interest, including intellectual property and inventory ownership rights, in International Electronics, Inc. ("IEI") for $14 million. *See* Dkt. 1 ¶ 17. The Purchase Agreement provided for subsequent progress payments to be made to Nassimi for any sale of IEI products that were transferred from Nassimi to Chamberlain

ORDER – 1

at closing. Dkt. 112, Ex. E at 12, § 2.3. Additionally, the Purchase Agreement required that $1 million remain in an escrow account for two years from the closing date. Dkt. 1 at 21.

Chamberlain and Nassimi allege conflicting facts surrounding the negotiation of the final purchase price. Chamberlain argues that Nassimi successfully negotiated a higher "up front" cash payment from the original offer "to compensate Nassimi for the risk associated with the non-development of the concept products." Dkt. 89, Ex. 13 at 107-108. Chamberlain contends that they purposely left out language that would bind Chamberlain to develop, market, or sell any of the IEI products. *See* Dkt. 86 at 3-4. Nassimi argues that pursuant to the letter of intent sent by Chamberlain, the purchase price was $24 million, which included a $14 million up front payment and $10 million in progress payments. *See* Dkt. 112, Ex. D at 10-13.

Nassimi contends that Chamberlain, instead of developing the IEI products, placed all of its resources into developing a non-IEI product called the Overlock and, therefore, breached the contract and violated its duty of good faith to sell the IEI products. *See* Dkt. 111 at 6. Chamberlain alleges that Nassimi submitted language to be included in the Purchase Agreement that would have bound Chamberlain to develop, market, and sell the IEI products, but Chamberlain purposely excluded those terms. *See* Dkt. 121. Nassimi argues that the $14 million plus $10 million in progress payments were offered in lieu of his original $20 million up front cash purchase price for IEI. *See* Dkt. 111 at 12.

Nassimi also alleges that, in the summer of 2009, Chamberlain improperly announced to its factory employees that it would be shutting down the Vancouver, Washington factory due to Nassimi's failure to comply with the FCC requirements. Dkt. 78 at 26-27. Additionally, Nassimi contends that Chamberlain told a customer of IEI, Ness Tagle, that Chamberlain would not be able to fulfill his future orders because Nassimi had not taken appropriate measures to maintain FCC compliant IEI products. *Id.*

ORDER – 2

1   On July 17, 2009, Chamberlain filed its complaint against Nassimi, asserting two
2   separate breach of contract claims. Dkt. 1. On August 21, 2009, Nassimi answered the
3   complaint and asserted six counterclaims against Chamberlain: Count I: Specific
4   Performance and Injunctive Relief Regarding the Escrow Fund; Count II: Breach of
5   Contract Express Terms Regarding the Escrow Fund; Count III: Breach of the Duty of
6   Good Faith and Fair Dealing Regarding the Escrow Fund; Count IV: Breach of Contract
7   Express Terms Regarding the Progress Payments; Count V: Breach of the Duty of Good
8   Faith and Fair Dealing Regarding Progress Payments; and Count VI: Defamation. *See*
9   Dkt. 11. On August 3, 2010, Nassimi filed a second amended answer[1] and asserted a
10  seventh counterclaim against Chamberlain, Count VI: Intentional Misrepresentation and
11  Fraudulent Inducement [regarding the] Progress Payments.[2] *See* Dkt. 78.

12  On August 20, 2010, Chamberlain filed the instant motion for summary judgment
13  on all seven of Nassimi's counterclaims. Dkt. 86. On the same day, Chamberlain also
14  filed a motion for summary judgment on its breach of contract claims against Nassimi
15  (Dkt. 82), which Chamberlain argues is relevant for this motion. *See* Dkt. 86 at 17.
16  Nassimi filed his response on September 13, 2010. Dkt. 111. Chamberlain filed its reply
17  on September 17, 2010. Dkt. 121.

## II. DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

---

[1] The first amended answer was filed on October 21, 2009. *See* Dkt. 19.

[2] In the second amended complaint, the defamation claim is Count VII of the counterclaims. Dkt. 78.

ORDER – 3

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 253). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Chamberlain's Motion for Summary Judgment**

The Court separates Nassimi's counterclaims into three categories for discussion: (1) Contract claims and relief regarding the escrow fund (Counts I thru III), (2) contract and tort claims regarding the progress payments (Counts IV thru VI), and (3) the defamation claim (Count VII).

ORDER – 4

**1.     Contract Claims Regarding the Escrow Fund**

Nassimi asserts three counterclaims against Chamberlain relating to the escrow account jointly held by Nassimi and Chamberlain in accordance with their Purchase Agreement. Nassimi alleges under Counts I, II and III that he is entitled to specific performance and injunctive relief, and monetary damages for Chamberlain's express breach of contract and breach of its duty of good faith and fair dealing regarding the escrow fund. In opposition, Chamberlain argues that, among other things, "[i]f the Court finds that Nassimi breached the Purchase Agreement as established in Chamberlain's Motion for Partial Summary Judgment as to Breach of Contract Liability, then all three counts fail." Dkt. 86 at 17. Significantly, Nassimi concedes that his escrow account counterclaims "turn on the outcome of Chamberlain's breach of contract claim." Dkt. 111 at 21.

Because the Court resolved Chamberlain's motion for summary judgment on its breach of contract claim in favor of Chamberlain, Nassimi's counterclaims on this issue fail, consistent with his concession. Therefore, the Court dismisses these counterclaims.

**2.     Contract and Tort Claims Regarding the Progress Payments**

Nassimi also asserts three counterclaims that relate directly to the earn-out payments in the Purchase Agreement. In Counts IV, V, and VI of Nassimi's counterclaims, Nassimi alleges that Chamberlain breached the express terms of the progress payments by failing to market, develop, and sell the IEI products ("Count IV"), breached the duty of good faith and fair dealing regarding the earn-out payments by failing to market, develop, and sell the IEI products ("Count V"), and intentionally misrepresented and fraudulently induced Nassimi to agree to the earn-out payments ("Count VI"). The pertinent portion of the Purchase Agreement regarding earn-out payments states:

> Section 2.3. Progress Payments. (a) Buyer shall make additional annual payments to Seller in the five (5) year period following the Closing (such payments are referred to as "Progress Payments") based on the Net

> Sales Revenue from the sale of the Products transferred at Closing. Progress Payments shall be payable to Seller based on a percentage of the Total Net Sales Revenue for each 12 month period in the following manner:
> (I) For annual Total Net Sales Revenue up to $5,000,000, the amount payable shall be five percent (5%) of Total Net Sales Revenue; and
> (ii) For annual Total Net Sales Revenue in excess of $5,000,000, the amount payable shall be $250,000 plus fifteen percent (15%) of Total Net Sales Revenues in excess of $5,000,000, provided, however, that the aggregate amount of all Progress Payments shall not exceed $10,000,000.
>  jurisdiction, and when joinder would destroy subject matter jurisdiction.

Dkt. 11 at 40.

Chamberlain argues that it had no duty under the Purchase Agreement to market and sell the IEI concept products (Nassimi's products), only a duty to "pay Nassimi *if and when* Chamberlain obtained 'Net Sales Revenues from the sale of the Products.'" Dkt. 86 at 6 (emphasis in original). Because Chamberlain did not sell any of the concept products, Chamberlain contends that there were no payments due and no breach of the Purchase Agreement. *See id.* Nassimi argues that Chamberlain attempts to rewrite the contract by adding in the "if and when" language, which does not exist in the Purchase Agreement. *See* Dkt. 111 at 9-10. The Court agrees.

Pursuant to the Purchase Agreement, Chamberlain "*shall* make additional annual payments" to Nassimi based on sales. The express language of the contract progress payment provision neither contains an express duty to develop and market the IEI products nor an express provision that allows Chamberlain to pay Nassimi *if and when* it sells the IEI products. Under the Purchase Agreement, Chamberlain provides for an express duty to make progress payments to Nassimi without providing for any conditions that govern the sale of the IEI products, which is a prerequisite to the progress payments.

Chamberlain argues, however, that Count V of Nassimi's counterclaim should be dismissed because there "is no 'free-floating' duty of good faith and fair dealing, unattached to an existing contract term." Dkt. 86 at 7, *citing* State of Washington's Standard Form Jury Instruction WPI 302.11 (internal citations omitted). Chamberlain contends that the requirement of good faith and fair dealing must be tied to a specific

ORDER – 6

contract term and there is no specific contract clause requiring Chamberlain to develop or market the IEI products. *See* Dkt. at 7. For this proposition, Chamberlain relies on *McFerrin v. Old Republic Title, Ltd.*, 2009 WL 2045212 (W.D. Wash 2009), where this Court held that "without the specific obligations, there can be no breach of the implied duty of good faith and fair dealing." Dkt. 86 at 10, *citing McFerrin*, 2009 WL 2045212 at *6.

*McFerrin* is distinguishable. In *McFerrin*, plaintiffs paid a $300 reconveyance fee as a transactional cost to defendants at the closing of the sale of their home to reconvey title from the mortgage holder back to plaintiffs. *Id.* The defendants had a third party perform the reconveyance service. *Id.* Plaintiffs sued under breach of contract and duty of good faith and fair dealing theories. *Id.* Per the escrow agreement, the reconveyance fee instructed the closing agent to "select, prepare, receive, hold, record and deliver documents as necessary to close the transaction." *Id*. There was no language specifically requiring defendants to perform the reconveyance service. *Id.* Plaintiffs alleged that defendants breached the contract by taking plaintiffs' $300 but not performing the reconveyance service—even though the title was actually reconveyed by a third party. *Id*. This Court held that the "Plaintiffs have failed to show that Defendant[s] had specific contract obligations to support their allegations of breach of contract" because the escrow agreement did not require the defendants to perform the reconveyance service. *Id*.

In this case, the Purchase Agreement specifically required Chamberlain *to make progress payments of up to $10 million* to Nassimi within five years from the closing date. Because Chamberlain had a duty to make the progress payments, under Washington law, Chamberlain also had an implied duty of good faith to make progress payments to Nassimi within five years from the closing date. *See Badgett,* 116 Wn. 2d at 569. Chamberlain's alleged failure to market, develop, or sell the IEI concept products may be a breach of Chamberlain's duty to make progress payments; as discussed above, a jury could reach such a conclusion, given the nature of conceptual products.

ORDER – 7

Nevertheless, Chamberlain argues that it negotiated and bargained away any duty to develop, market, or sell the IEI products, and requiring a duty of good faith and fair dealing to do so would contradict the conditions that Chamberlain and Nassimi did bargain for. *See* Dkt. 121 at 7-9, *citing Badgett,* 116 Wn. 2d at 570.

Here, because there are no express conditions that govern the sale of the IEI concept products, a pre-requisite to the progress payments, the Court may look to extrinsic evidence of the Purchase Agreement negotiations. Extrinsic evidence or parol evidence is admissible to determine the intent of the parties' agreement. *See Berg v. Hudesman*, 115 Wn.2d. 657, 667-669 (1990). In *Berg*, the Washington State Supreme Court adopted § 212 of the Restatement (Second) of Contracts, which provides:

> (1) The interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances, in accordance with the rules stated in this Chapter.
> (2) A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Otherwise a question of interpretation of an integrated agreement is to be determined as a question of law.

*Id*.

Because the parties did not include express provisions of the conditions surrounding the progress payments of the Purchase Agreement, the Court may look to extrinsic evidence to determine Nassimi's and Chamberlain's intent. The Court is "mindful of the general rule that parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake." *Id*. However, such evidence is allowed "to prove omitted but not inconsistent terms, or to determine the intent of the parties." *Id*.

Chamberlain argues that it disavowed any obligation to develop the IEI products because it purposely rejected Nassimi's attempts to include a requirement that Chamberlain use "commercially reasonable efforts" to develop and market the IEI products during contract negotiations. Dkts. 86 at 4, 121 at 6. Nassimi contends that the

"commercially reasonable efforts" clause was unnecessary and, therefore, not included because the progress payments were identified as a part of the purchase price. Dkt. 111 at 10.

Because the Court finds that Chamberlain had a duty to make progress payments for sale of the IEI products, the trier of fact must determine whether Chamberlain breached its duty of good faith and fair dealing in making those progress payments. Not developing, marketing, or selling the IEI concept products may be a breach of Chamberlain's duty to make progress payments. Logically, in order to make the progress payments under the contract, Chamberlain would have to sell the IEI products. While there is no express provision requiring Chamberlain to develop and market the IEI products, a jury might conclude that Chamberlain made inadequate efforts to develop, market, and sell the IEI concept products and, therefore, Chamberlain breached its duty of good faith to make progress payments. After all, concept products by their inherent nature require development and marketing in order to be sold.

Both Chamberlain and Nassimi submit conflicting evidence surrounding the negotiations. While Chamberlain argues that it had bargained away any duty to develop, market, or sell the IEI products (Dkt. 121 at 7-9), Nassimi argues that the course of dealing shows that the progress payment provision proves that Chamberlain had a duty to develop and market the IEI products and the Purchase Agreement reflects this because the progress payments are included as a portion of the purchase price (Dkt. 111 at 11-12). Therefore, there is a question of fact as to whether Chamberlain breached its duty to make progress payments by failing to develop and market the IEI concept products.[3]

---

[3]Chamberlain argues in a footnote that even if the Court did not dispose of Nassimi's counterclaims as a matter of law, Chamberlain did in fact make efforts to develop and market the IEI products. However, whether Chamberlain did make the necessary efforts to develop and market the IEI products is a question of fact for the jury to decide.

ORDER – 9

Finally, turning now to Nassimi's Count VI claim, Nassimi states that Chamberlain

> intentionally withheld from Nassimi its plan, intent, and belief that little or no effort, expense, and resources would be placed in marketing, advertising, promoting, and selling IEI products which could result in Progress Payments under the Purchase Agreement. These intentional misrepresentations and fraudulent omissions were made by Chamberlain knowingly, and Chamberlain never intended to market, advertise, promote, and sell IEI products which could result in Progress Payments under the Purchase Agreement.

Dkt. 78. at 27.

To prove fraud in the inducement claim, Nassimi must show with "clear, cogent, and convincing evidence" that there was

> (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person to whom it is made; (6) the recipient's ignorance of its falsity; (7) the recipient's reliance on the truth of the representation; (8) the recipient's right to rely upon it; and (9) consequent damages.

*Goel v. Jain*, 259 F. Supp. 2d 1128, 1136 (W.D. Wash. 2003), *citing Farrell v. Score*, 67 Wn.2d 957, 958-59 (1966); *Kirkham v. Smith*, 106 Wn. App. 177, 183 (2001). Even if taken as true, Nassimi only alleges that misrepresentations were made about future events, as opposed to a presently existing fact. Moreover, Nassimi's fraud claims should be dismissed as a matter of law because Nassimi released his fraud claims by signing a general release form at closing. *See* Dkt. 86. Under the terms of the release, Nassimi released Chamberlain from

> any and all causes of action, suits, demands, rights, claims, entitlements and losses, whether arising or pleaded in law or in equity, under contract, statute, tort or otherwise, whether known or unknown, whether accrued, potential, inchoate, liquidated, contingent, or actual, whether asserted or that might have been asserted, which any Seller Releasor now has, has ever had or may hereafter have against the respective Releasees, arising out of any matter, act, omission, cause or event occurring contemporaneously with or before the Closing Date.

Dkt. 89, Ex. 18 at 2. Chamberlain contends that the facts in this case are similar to those in *Goel*, where the court held that a general release, similar to the one used in the Purchase Agreement, released all claims, including fraud claims, despite evidence that the

ORDER – 10

buyer had fraudulently induced the seller into selling his business. *Goel*, 259 F. Supp. 2d at 1136 . Nassimi argues that the court in *Goel* found that the "release is valid and enforceable under Washington law unless it is induced by fraud, misrepresentation or overreaching or if there is clear and convincing evidence of mutual mistake." Dkt. 111 at 19, *citing Goel*, 259 F. Supp. 2d at 1136 (*quoting Nationwide Mutual Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 187 (1992)). Nassimi contends that since the release was a part of the Purchase Agreement, and Count VI alleges that Nassimi was fraudulently induced into signing the Purchase Agreement, the release was also fraudulently induced. Nassimi argues that Chamberlain did not address the facts alleged by Nassimi as to the Purchase Agreement, and, thus, did not meet its burden of proof for summary judgment.

However, Chamberlain correctly argues that the release, as a condition of the Purchase Agreement, would release Chamberlain from Nassimi's fraud claims. In *Goel*, as here, the release was a negotiated condition of the contract. Chamberlain's alleged omissions that Nassimi relies upon to prove fraud stems from incidents that would have occurred before the Purchase Agreement and release were signed. Dkt. 78 at 25, ¶ 59.

Nassimi alleges that Chamberlain fraudulently induced Nassimi to sign the Purchase Agreement by failing to disclose Chamberlain's omission that it would not "market, advertise, promote, manufacture, and sell" the IEI products. *Id*. Nassimi argues that Chamberlain, therefore, had a duty to disclose its intention before Nassimi signed the Purchase Agreement or the release. However, in *Goel*, the court found that no such duty existed where there was not a fiduciary relationship between the parties.

> [T]he parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and confidence in the other. A number of factors are used to determine whether a party has a duty to disclose: (1) the relationship of the parties, (2) their relative access to information, (3) the benefit that the defendant derives from the relationship, (4) the defendant's awareness that the plaintiff was relying upon the relationship in making his investment decisions, and (5) the defendant's activity in initiating the transaction.

ORDER – 11

*Id.* at 1137, *quoting Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir.1996).

Nassimi does not provide any evidence of Chamberlain's omission that it never intended to promote or sell the IEI products. Moreover, even if the Court takes Nassimi's allegations as true, there was no duty to disclose—Nassimi was an adept business man, represented by counsel in the negotiation of the sale of IEI. *See* Dkt. 111. There is no evidence of a fiduciary relationship between Nassimi and Chamberlain.  This Court holds that the release signed by Nassimi contemporaneous to the Purchase Agreement "was not induced by fraud, was not the result of overreaching, and is not otherwise void or voidable." *Goel*, 259 F. Supp. 2d at 1138.

> If the Court were to allow plaintiff to avoid the clear and unambiguous terms of the release, not to mention the Purchase Agreement's integration clause, "contracts would not be worth the paper on which they are written." . . . Plaintiff[ ] cannot overcome the written instrument here, and, particularly, the integration clause, by invoking the fraud-in-the-inducement exception to the parol evidence rule. The exception for a party who "has been induced by a fraudulent misrepresentation to enter the contact" . . . must not be stretched or inflated in a way that "would severely undermine the policy of the parol evidence rule, which is grounded in the inherent reliability of a writing as opposed to the memories of contracting parties." . . . We need not belabor the point. We have here the case of "a party with the capacity and opportunity to read a written contract, who [has] execute[d] it, not under any emergency, and whose signature was not obtained by trick or artifice"; such a party, if the parol evidence rule is to retain vitality, "cannot later claim fraud in the inducement."

*Id.* at 1138-1139 (*quoting One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir.1988) (citations omitted)).

Furthermore, in Nassimi's deposition, he ratified the release by stating that he would abide by the terms of the release (Dkt. 122, Ex. A at 4), thus waiving his rights to his fraud in the inducement claim. *See Poweroil Mfg. Co. v. Carstensen*, 69 Wn.2d 673, 678 (Wash. 1966) ("The right to rescind a voidable contract may be lost where there has been a waiver or ratification. Ratification means that one affirms that which he had a right to repudiate."). The release signed by Nassimi as a condition of the Purchase Agreement

clearly bars Nassimi's fraud claims. The Court grants summary judgment as to Nassimi's Count VI fraud claim in favor of Chamberlain.

### 3. Defamation Claim

In Count VII of Nassimi's counterclaims, he alleges that Chamberlain made false and defamatory statements against Nassimi in two separate instances: (1) employees of Chamberlain told a customer, Ness Tagle ("Tagle"), that his order for IEI products could not be fulfilled because Nassimi had not taken appropriate measures to be FCC compliant ("Tagle Communication"); and (2) representatives of Chamberlain had made an announcement to its factory employees in the summer of 2009 that Chamberlain would be closing down the Vancouver, Washington production plant because Nassimi misrepresented that the IEI products complied with FCC requirements ("Factory Employee Communication"). Dkt. 78 at 26-27. Nassimi states that Chamberlain's statements were false and defamatory and caused damage to Nassimi's reputation. *Id.* at 27.

Chamberlain argues that even if the statements were defamatory, it is immune from liability because the two instances of communication were privileged. Dkt. 86 at 18. For a defamation claim, Nassimi must prove the following elements: "(1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages." *Moe v. Wise,* 97 Wn. App. 950, 957 (1999), *citing Caruso v. Local Union No. 690*, 107 Wn.2d 524, 529 (1987).

In Washington, courts have found a qualified privilege on numerous occasions where the statement might otherwise be defamatory. *See id.* Chamberlain asserts that its communications are protected by the common interest privilege. Dkt. 86 at 18. "The common interest privilege applies when the declarant and the recipient have a common interest in the subject matter of the communication." *Id., citing Ward v. Painters' Local Union No. 300*, 41 Wn.2d 859, 865-66 (1953).

ORDER – 13

### (a) Tagle Communication

Chamberlain argues that its conversation with its customer, Tagle, is immune from a claim of defamation under the common interest privilege because Tagle wanted to know why Chamberlain was not going to fulfill a future order for IEI products. Dkt. 86 at 19. In his response, Nassimi fails to address Chamberlain's argument that the Tagle Communication was privileged. In fact, Nassimi does not even mention Chamberlain's discussion with Tagle. Under Local Rule CR 7(b)(2), "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Accordingly, the Court finds Chamberlain's argument, that it's conversation with Tagle was privileged, as meritorious and grants summary judgment in favor of Chamberlain as to the Tagle Communication.

### (b) Factory Worker Communication

Chamberlain contends that the Factory Worker Communication was protected under the common interest privilege because the communication took place within the company and the topic of the communication was directly attributable to the well-being of the company, which all parties had a common interest in. Dkt. 86 at 19. This Court agrees.

> The rule is based on the fact that one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them. This interest in their common affairs entitles him to information as to how they are conducted, or to information that affects the common interest, even though he is not personally concerned with the information.

*Moe*, 97 Wn. App. at 958, *quoting* Restatement (Second) of Torts § 596, comment (c). Chamberlain's representatives were giving information to it's employees regarding information that directly affects all parties.

Nassimi argues that the communications between the Chamberlain representative and the factory workers was libel *per se* because Chamberlain acted with actual malice when it told its employees that it would be shutting down the Vancouver factory because

ORDER – 14

of misrepresentations made by Nassimi. *See* Dkt. 111 at 20-21. Nassimi alleges that Chamberlain lied because the actual reason for shutting down the factory was a planned closure to relocate to Mexico. *Id.* at 20. Nassimi argues that "the common interest privilege is lost without proof of knowledge or reckless disregard as to the falsity of a statement." Dkt. 111 at 20, *citing Moe*, 97 Wn. App. at 964-65. "This description of reckless disregard is the same as the . . . definition of 'actual malice.'" *Id.* at 964, *citing Haueter v. Cowles Publ'g Co.*, 61 Wn. App. 572 n. 5, 588 (1991). To show that Chamberlain abused its common interest privilege, Nassimi "must overcome the same burden facing a public official plaintiff: he must prove that [Chamberlain] acted with actual malice." *Id.* at 964-965, *citing Story v. Shelter Bay Co.*, 52 Wn. App. 334, 342-43 (1988) (public official fault standard applied against private plaintiff in abuse of privilege analysis). "To prove actual malice a party must establish that the speaker knew the statement was false, or acted with a high degree of awareness of its probable falsity, or in fact entertained serious doubts as to the statement's truth." *Id.* at 965, *quoting Story*, 52 Wn. App. at 343.

The issue is whether Chamberlain's claim that the reason for closing down the factory was caused by Nassimi's misrepresentation was false.[4] Nassimi has not shown with clear and convincing evidence that the statement made by the representatives of Chamberlain to its employees was false. Nassimi only offers evidence that Chamberlain was, at sometime in the future, going to close the Vancouver factory to relocate to Mexico. Dkt. 111. There is no evidence that the Chamberlain representatives had "actual, subjective knowledge that the allegations were false." *Moe*, 97 Wn. App. at 964. Nassimi cannot overcome Chamberlain's evidence that the Factory Worker Communications were

---

[4] In Chamberlain's motion for summary judgment on its breach of contract claims (Dkt. 82), the Court found that Nassimi breached the contract by providing IEI products that did not comply with FCC requirements. Dkt. 55. Therefore, Chamberlain's statement that Nassimi made a misrepresentation is not at issue.

ORDER – 15

made as a direct result of Nassimi's misrepresentations about the IEI products complying with FCC requirements.

Therefore, the Court grants summary judgment in favor of Chamberlain as to Nassimi's Count VII counterclaim.

### III. ORDER

Therefore, the Court **DENIES** Chamberlain's motion for summary judgment as to Nassimi's counterclaims, Counts IV and V, and **GRANTS** Chamberlain's motion for summary judgment as to Nassimi's counterclaims, Counts I, II, III, VI, and VII. Nassimi's counterclaims, Counts I, II, III, VI and VII, are **DISMISSED with prejudice.**

DATED this 25th day of October, 2010.

*/s/ Benjamin H. Settle*
BENJAMIN H. SETTLE
United States District Judge