UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., <br><br>    Plaintiff, <br><br>  v. <br><br>SHARY NASSIMI, <br><br>    Defendant. | CASE NO. C09-5438BHS <br><br>ORDER DENYING DEFENDANT'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S RESCISSION CLAIM |

This matter comes before the Court on Defendant's ("Nassimi") renewed motion for partial summary judgment on Plaintiff's ("Chamberlain") claim for rescission (Dkt. 92). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On August 20, 2010, Nassimi renewed his motion for partial summary judgment dismissing Chamberlain's rescission claim. Dkt. 92. On September 13, 2010, Chamberlain responded in opposition to the motion (Dkt. 103), and on September 17, 2010, Nassimi replied (Dkt. 123).

ORDER - 1

## II. FACTUAL BACKGROUND

For a more complete factual background see the Court's prior order denying Nassimi's partial summary judgment motion to dismiss Chamberlain's rescission claim. Dkt. 55. This matter arises out of a dispute regarding Plaintiff's purchase of Nassimi's former company, International Electronics, Inc. ("IEI"), which was subject to a purchase and sale agreement (the "Agreement"). Dkt. 9 (Amended Complaint) ¶ 2. Chamberlain acquired IEI on or about July 27, 2007. *Id*. At that time, Nassimi was the sole owner of IEI. Dkt. 55 at 2 (order denying partial summary judgment to dismiss rescission claim). Chamberlain thereafter demanded rescission of the Agreement on July 14, 2009. *See* Declaration of Shary Nassimi (Nassimi Decl., Dkt. 27), Ex. P (letter demanding rescission).

Chamberlain contends that it is entitled to rescind the Agreement based on allegations that Nassimi sold Chamberlain a company on the allegedly false representation that its products ("IEI legacy products") were FCC certified. Dkt. 55 at 2 (quoting Chamberlain's Amended Complaint). In March of 2008 and then again in June of 2009, Chamberlain contends that it learned that most, if not all, of the IEI legacy products were not actually legal to sell in the United States because the products had been altered, to obtain FCC certification, from that which was actually being sold by IEI and later by Chamberlain. *See id*; *see also* Declaration of Robert Keller (Keller Decl., Dkt. 30-3) ¶¶ 10 (discussing discrepancies with the 300 MHz line), 12 (discussing discrepancies with 900 MHz line).

Following these discoveries, Chamberlain stopped manufacturing the 900 Mhz line; stopped selling the devices to distributors, other wholesalers, and retailers; laid off employees at the Vancouver, Washington facility and reduced the factory to a skeleton crew. *Id*. at ¶ 20. Eventually, Chamberlain closed the Vancouver facility completely and

moved all operations to Nogales, Mexico in November 2009. *Id*. Chamberlain has maintained throughout this litigation that "[w]hile relocation of the factory has always been a *prospect*, Chamberlain had no plans to shut down the factory on the *emergency basis* . . . ." *Id*. (emphasis added). Chamberlain has also maintained that it shut down operations within a day or two of learning of the FCC noncompliance issues. *Id.* On July 14, 2009, Chamberlain demanded rescission of the Agreement, which Nassimi refused. *Id*. ¶ 21. *See also* Nassimi Decl., Ex. P.

As will be discussed in more detail below, Nassimi argues that rescission is not a viable basis upon which relief may be granted in favor of Chamberlain, which he contends "fundamentally altered the company;" and that, if true, such alteration can operate to prevent rescission. *See* Dkt. 123 at 2.

## III. DISCUSSION

Nassimi moves the Court to grant partial summary judgment in his favor, dismissing Chamberlain's claim of rescission. Dkt. 92. The Court previously denied such a motion. Dkt. 55. In that order, the Court ruled in pertinent part as follows:

> Nassimi moves the Court to enter partial summary judgment on the basis that Chamberlain altered IEI in such a manner after acquisition that IEI could not possibly be returned to Nassimi in the manner in which it was sold. *See* Dkt. 23 at 18 (relying on, *e.g.*, Declaration of James Torguson, Dkt. 25). Chamberlain flatly denies Nassimi's claim. *See, e.g.,* Dkt. 30 at 20 (relying on Keller Decl., Dkt. 30-2 ¶ 21).
> Although Nassimi correctly points out that courts have held that a party's actions may be deemed incompatible with rescission given an inability to return the parties to the *status quo ex ante*, such a finding cannot be made by the Court on summary judgment when material questions of fact regarding such compatibility remain. When the Court reviews the facts of this case in the light most favorable to Chamberlain, it cannot resolve the issue as a matter of law. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. (The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.)
> Therefore, the Court denies Nassimi's motion for partial summary judgment on this issue.

Dkt. 55 at 11-12. Nassimi now renews his motion and asserts that new facts support granting the motion at this time. *See* Dkts. 92, 123.

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Rescission**

In Washington,

> [r]escission means to abrogate or annul and requires the court to fashion a remedy to restore the parties to the relative positions they would have occupied if no contract had ever been made. Rescission is an equitable remedy and requires the court to fashion an equitable solution. The circumstances of each particular case must largely determine what is necessary for one party to do in order to place the other in *status quo*.

*Busch v. Nervik*, 38 Wn. App. 541, 547-548 (1984) (collecting cases). The Washington Supreme Court has held that

> where rescission is granted either by decree of a court or by mutual agreement, the parties must be placed "in status quo in so far as it is practicable" to do so. We agree that the contract, when rescinded by a court of competent jurisdiction, is deemed to be not only at an end, but, further, that it never existed. Rescission contemplates full restoration of the parties to their position before the contract had been made. But the important qualification in the foregoing rule–so far as practicable or possible–must be noted.

*Yount v. Indianola Beach Estates, Inc.*, 63 Wn.2d 519, 525 (1964).

The right of rescission may be waived. Waiver is a voluntary and intentional relinquishment of a known right. *Grant v. Morris*, 7 Wn. App. 134, 137 (1972).

> It should be remembered that waiver is an equitable doctrine. Its purpose is to facilitate the doing of equity, not the perpetration of fraud. While reliance is not a requirement, as it is in the doctrine of estoppel (*see Kessinger v. Anderson*, 31 Wn.2d 157 (1948)), it is still necessary to show that the party who it is claimed has waived a right, did so intentionally and with full knowledge of his rights. In *Vinneau v. Goede*, 50 Wn.2d 39 (1957), we held that the question whether there was an intent to waive is one of fact.

*Weitzman v. Bergstrom*, 75 Wn.2d 693, 699 (1969). Waiver is an intentional act with a purpose and intent to forgive the fraud and a clear election not to rescind. *Birkeland v. Corbett*, 51 Wn.2d 554 (1958); *Wickre v. Allen*, 58 Wn.2d 770 (1961).

ORDER - 5

In *Wickre*, the Washington Supreme Court held that the right of rescission will not be waived absent acts signifying an election to "unequivocally waive [the] right of rescission." *Wickre*, 58 Wn.2d at 775. Chamberlain argues that *Wickre* stands for the proposition that determining whether rescission is available as an equitable remedy is "measured at the time it is first demanded, not after." Dkt. 103 at 6. This is an incorrect understanding of the holding in *Wickre*.

*Wickre* involved a rescission action for the purchase of a radio station. The *Wickre* court found "substantial evidence in the record to support the finding of fraud and the plaintiff's right to rely thereon." *Id.* at 773. The plaintiff's rescission claim was timely made, and the court did not conclude that the plaintiff had waived the right of rescission. *Id*. The *Wickre* court went on to discuss applicable case law regarding situations, much like this case, wherein the party allegedly induced by fraud into a contract was nevertheless required to preserve the fruits of litigation as an involuntary bailee pending the outcome of litigation. *Id*. at 776 (citing *Bariel v. Tuinstra*, 45 Wn.2d 513, 524 (1954), *Holland Furnace Co. v. Korth*, 43 Wn.2d 618 (1953)). Relative to these cases, the *Wickre* court noted that the plaintiff continued to operate the radio station, which constituted plaintiff's efforts to preserve the fruits of litigation as required by his status as an involuntary bailee. *Id*. at 778. The opinion in *Wickre* does not hold, as Chamberlain argues, that the availability of rescission is determined from the moment rescission was demanded by the defrauded party. Significantly, the court went on to examine what happened following the demand for rescission and the proper tender of returning the property received. Thus, a more accurate read of *Wickre* does not support Chamberlain's interpretation of that case. Moreover, Chamberlain does not provide any other authority to support the proposition that determining whether rescission is available as an equitable remedy is "measured at the time it is first demanded, not after." *See, e.g.,* Dkt. 103 at 6.

ORDER - 6

Additionally, the Court finds the facts of *Wickre* to be distinguishable from this case. Nassimi asserts, and Chamberlain does not dispute, that Chamberlain made a number of alterations to IEI as a company and to its individual products both from a technical aspect and a marketing aspect. *See* Dkt. 92 at 4-5 (citing relevant portions of the record). For example, Nassimi alleges that Chamberlain changed the name of IEI to Chamberlain Wireless Products (*id.*) (citing Nassimi Decl. ¶ 12); that Chamberlain changed the names of IEI's products (citing Petroff Decl. ¶ 7); and, among other things, that Chamberlain closed the Vancouver, Washington plant, terminated its employees, and moved operations to Nogales, Mexico. *Id.* ¶¶ 4, 6, 8. Such facts are arguably inconsistent with the obligations of an involuntary bailee, which Chamberlain became when it attempted to rescind the Agreement with Nassimi and Nassimi refused. In short, looking at the record, in the light most favorable to Chamberlain (the nonmoving party), there remains a question of fact as to whether and to what extent Chamberlain can return that which it received from Nassimi to effect rescission. It may be that a jury will determine that Chamberlain is entitled to rescission but that nothing remains to return to Nassimi, which generally would result in denying rescission as a form of relief.

Contrary to Nassimi's position, however, such a situation would not necessarily be fatal to Chamberlain's ability to seek rescission. In fact, Nassimi concedes as much by relying on *Payne v. Hiram Lindsey Co.*, 71 Wn. 293, 297 (1912). *Payne* involved the purchase and sale of a business wherein it was alleged and proven that the contract was induced by fraud, which entitled the plaintiff to seek rescission. In *Payne* the court adopted the following rule regarding rescission in instances where there is little, if anything, to return to the seller in the case of the seller's fraud:

> Where the party seeking relief has by his own acts rendered restoration of the subject-matter or consideration impossible, rescission will generally be denied. But where his inability to make restitution is not the result of his deliberate and willful act, but occurs without any fault on his part, and justice can be done without requiring him to restore what he

ORDER - 7

received, then rescission will be granted, and the equities of the parties will be adjusted by the final decree.

*Id*. at 298 (citations omitted). Eleven years later, the Washington Supreme Court relied on *Payne* for this rule and elaborated thereupon as follows:

> The general rule is that one seeking to rescind must return what he received. *But in proper instances this rule is relaxed*. If, because of his own fault, he cannot make return, then the rescission will not be granted-at least, without making him pay the value of that which he cannot return. But if the property be lost without his fault, then the failure to return will not defeat rescission.

*Hillman v. Gordon*, 126 Wash. 614, 628 (1923) (emphasis added).

Reading these cases together, the Court concludes that, in order for Chamberlain to prevail on its rescission claim, it will have to establish that (1) Nassimi committed fraud in the inducement, which gives rise to the right of rescission; (2) that Chamberlain did not unequivocally waive this right; and (3) that Chamberlain can return what was received from Nassimi in the transaction. Alternatively, if Chamberlain cannot return that which was received, it must either establish that (1) such inability is not attributable to the fault of Chamberlain or (2) that justice could be served in equity by granting rescission with an offset for the value of that which cannot be returned to Nassimi.

**C. Nassimi's Partial Summary Judgment Motion**

Nassimi moves the Court to dismiss Chamberlain's rescission claim on summary judgment. The Court has previously determined that a question of fact remains as to whether and to what extent Chamberlain could return Nassimi to the *status quo ex ante*, which leaves Chamberlain's rescission claim as a question for the jury at trial. *See* Dkt. 55. In that order the Court ruled as follows:

> Although Nassimi correctly points out that courts have held that a party's actions may be deemed incompatible with rescission given an inability to return the parties to the *status quo ex ante*, such a finding cannot be made by the Court on summary judgment when material questions of fact regarding such compatibility remain. When the Court reviews the facts of this case in the light most favorable to Chamberlain, it cannot resolve the issue as a matter of law. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. (The Court must resolve any factual issues of controversy in favor of the

ORDER - 8

nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.)

Dkt. 55 at 12.

Nassimi's renewed motion reiterates the same facts alleged in the prior motion for partial summary judgment on the rescission issue. In the instant motion, Nassimi advances what he contends are new arguments:

> (1) [Chamberlain] liquidated [IEI's] former Vancouver plant and headquarters not because of Nassimi's wrongdoing, but for Chamberlain's convenience; (2) that Chamberlain re-engineered the radio transmitter section of Mr. Nassimi's gate access products during the first six months it owned IEI; and (3) that James Crider was the Engineering Manager of Chamberlain Wireless Products, and in March 2008, after Crider initially admitted to his deceptions, Chamberlain *specifically tasked* Crider with reporting on the FCC certification status of all Chamberlain Wireless Products, but he knowingly deceived Chamberlain regarding the FCC status of [the] 900 MHz products for another 15 months and greatly expanded this FCC compliance problem beyond the situation when Chamberlain acquired IEI while Chamberlain froze Mr. Nassimi out of the Company.

Dkt. 123 at 2 (emphasis in original).

### 1.   Liquidation

Nassimi argues that the liquidation of IEI was done with the intent of moving the company to Nogales, Mexico, not because of the alleged fraud. To support this claim, Nassimi relies on the deposition of Robert C. Markwart, Chamberlain's Executive Vice President of Sales and Marketing. Dkt. 123 at 3 (citing Dkt. 124, Ex. 3, Markwart Dep.). In opposition, Chamberlain relies on the declaration of Robert Keller for the fact that, while it may have thought about or even intended to move operations to Mexico at some point, it did not intend to shut the Vancouver plant down on an allegedly emergency basis and that the decision was precipitated by chamberlain's realization that the IEI products were not legal to sell in the United States due to FCC noncompliance. *See* Dkt. 103 at 6 (relying on Keller Decl. (Dkt. 30-3) ¶ 20 ("While relocation of the factory had always been a prospect, Chamberlain had no plans to shut down the factory on the emergency basis that faced us."))

ORDER - 9

When the parties present differing versions of the truth, both reasonably supportable by facts developed in discovery, the Court cannot resolve such issues on summary judgment, such is the obligation of the jury. Because differing, supportable versions of the truth are presented, the Court denies Nassimi's motion for partial summary judgment on this issue.

Additionally, even if Chamberlain caused the inability to return the parties to the *status quo ex ante*, a question remains whether, notwithstanding such a fact, Chamberlain would remain entitled to rescission less the value of that which cannot be returned. *See Hillman*, 126 Wash. 628.

### 2. Re-engineered Transmitter

Nassimi argues that Chamberlain made significant alterations to the IEI gate access products by adding new computer chips and broadcast protocols (Chamberlain's "rolling code"). Dkt. 123 at 5. Nassimi asserts that this modification is incompatible with rescission. *Id*. Chamberlain does not deny making such modifications.

However, for the same reasons discussed in the prior section, whether such modifications are incompatible or compatible with rescission is a question for the jury. *See also* Dkt. 55 (leaving the question of compatibility on similar arguments to the fact finder). Incompatibility with rescission, if established on this issue, may increase any offset in the potential grant of rescission, if and when the Court is in a position to fashion an equitable remedy.

Therefore, the Court denies Nassimi's motion for partial summary judgment on this issue.

### 3. Crider's Involvement

In the alternative, Nassimi argues that Chamberlain cannot seek rescission because of its mismanagement of Jim Crider ("Crider"). Dkt. 123 at 12. Specifically, Nassimi argues that "[t]he company that Chamberlain wanted to give back to Mr.

ORDER - 10

Nassimi had substantially more widespread, different, and more serious FCC problems than the company that Chamberlain acquired." *Id*. This argument is based on the theory that Crider (former employee of IEI and then Chamberlain) was aware of and continued to exacerbate the FCC issues attributed to the IEI legacy products while working at Chamberlain and that Chamberlain was aware of Crider's knowledge and alleged deceptive practices regarding FCC compliance. *See id*.

This argument is confusing at best. In the event Chamberlain establishes that Nassimi fraudulently induced Chamberlain into the contract, it would be that fact that gives rise to the right of rescission. Whether Chamberlain thereafter mismanaged its company by, among other things, permitting Crider to continue to create unsalable products due to FCC noncompliance, is irrelevant to the right of rescission based on Nassimi's alleged fraud. At best such argument goes to whether Chamberlain can return to Nassimi what was received as part of the acquisition. This argument, as discussed above, is not able to be resolved on summary judgment and, if anything, would likely effect only an offset should rescission be granted and a remedy be fashioned.

Therefore, the Court denies summary judgment on this issue.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Nassimi's motion for partial summary judgment on the issue of rescission is **DENIED** as discussed herein.

DATED this 25th day of October, 2010.

BENJAMIN H. SETTLE
United States District Judge